IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH O. AVERIETT, | ) | CASE NO. 5:09 CV 1743 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE GAUGHAN |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | MAGISTRATE JUDGE McHARGH |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule.  The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Joseph Averiett's application for Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court recommends that the decision of the Commissioner be AFFIRMED.

## I.  INTRODUCTION and PROCEDURAL HISTORY

On April 23, 2003, Plaintiff filed an application for Period of Disability and Disability Insurance Benefits (Tr. 18, 93).  He protectively filed an application for Supplemental Security Income on April 5, 2003 (Tr. 18, 562).  In the applications, Plaintiff alleged that he became disabled on December 15, 2002 due to a left hip injury, a right wrist injury, schizophrenia, anger disorder,

1

bipolar disorder and depression (Tr. 564A, 566). Plaintiff's date last insured for purposes of his

Disability Benefits application was June 30, 2007 (Tr. 19, 96).

Plaintiff's applications for benefits were denied initially and upon reconsideration (Tr. 61, 66,

564, 566). Plaintiff timely requested and was granted a hearing before Administrative Law Judge

Edmond Round (the "ALJ"). At the initial hearing on March 3, 2006, the ALJ granted Plaintiff's

request for a psychological examination (Tr. 18, 659). A second hearing was held on November 15,

2006, at which time the ALJ granted Plaintiff's request to allow for additional medical evidence to

be included in the record (Tr. 18, 662-694). Finally, on April 19, 2007, Plaintiff appeared with

counsel and testified at a third hearing (Tr. 696–734). Dr. Carolee Lesyk, a Medical Expert ("ME"),

and Evelyn Sindelar, a Vocational Expert ("VE") also testified at Plaintiff's final hearing (Tr. 712,

723). On May 21, 2007, the ALJ issued a written decision denying Plaintiff's applications for

benefits (Tr. 18-31). In the written decision, the ALJ applied the familiar five-step sequential

evaluation[1] and determined at the fifth step that Plaintiff had the residual functional capacity ("RFC")

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step
sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a),
416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)    If a claimant is doing substantial gainful activity – i.e., working for profit – she is
       not disabled.

(2)    If a claimant is not doing substantial gainful activity, her impairment must be
       severe before she can be found to be disabled.

(3)    If a claimant is not doing substantial gainful activity and is suffering from a severe
       impairment that has lasted or is expected to last for a continuous period of at least
       twelve months, and her impairment meets or equals a listed impairment, claimant is
       presumed disabled without further inquiry.

(4)    If a claimant's impairment does not prevent her from doing her past relevant work,
       she is not disabled.

2

to perform a limited range of sedentary work existing in significant numbers in the national economy and, therefore, was not disabled (Tr. 18-31).  Plaintiff appealed the ALJ's decision, and the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner (Tr. 7-9, 13-14).  On appeal, Plaintiff claims that the ALJ's decision is not supported by substantial evidence.

Born on November 4, 1970, Plaintiff was 32 years old on his alleged disability onset date, 36 years old at the time of the ALJ's determination, and was at all times a "younger individual" for purposes of the Social Security regulations (Tr. 29, 93, 562); *see* 20 C.F.R. §§404.1563, 416. 963. Plaintiff has a limited high school education and no past relevant work experience (Tr. 29).

## II.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20. C.F.R. §§ 404.1505, 416.905.

## III.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial

---

(5)     Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x. 361, 362 (6th Cir. June 15, 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989)

## IV.  ANALYSIS

### A.  Whether the ALJ Erred in his Assessment of Plaintiff's Physical Impairments

Plaintiff first argues that the ALJ erred by mischaracterizing the opinions of consulting physician, Dr. Holbrook, regarding Plaintiff's ability to stand and walk. Dr. Holbrook opined that Plaintiff was limited to standing and walking for 1-2 hours per day (Tr. 285). On the other hand, the ALJ found that Plaintiff had the RFC to stand and walk 2 hours per day (Tr. 22). Essentially, Plaintiff maintains that the ALJ mischaracterized Dr. Holbrook's finding by stating that Plaintiff could walk/stand for 2 hours instead of 1-2 hours as opined by Dr. Holbrook. According to Plaintiff, Dr.

Holbrook's opinion is inconsistent with sedentary work, and the ALJ failed to give good reasons for rejecting Dr. Holbrook's opinion.

Plaintiff's argument is not well taken.  Social Security Ruling 96-9p indicates that sedentary work requires occasional walking and standing.  It further states that occasional walking and standing means "occurring from very little up to one-third of the time, and would generally total *no more than* about 2 hours of an 8-hour workday." SSR 96-9p (emphasis added).   Dr. Holbrook's finding that Plaintiff could stand and walk for 1-2 hours per day is not inconsistent with this definition.  The alleged one hour time-span difference between the ALJ's RFC and Dr. Holbrook's RFC is *de minimus* and does not constitute reversible error.

Next, Plaintiff contends that the ALJ misstated evidence in the record.  Specifically, Plaintiff alleges that the ALJ misconstrued statements made by Plaintiff's wife regarding Plaintiff's abilities to do everyday activities.  In determining that the limiting effects of Plaintiff's malunion of his right wrist were not credible, the ALJ noted that Plaintiff's wife stated that he could mow the lawn by pushing a lawn mower, use an iron, and hold a cigarette (Tr. 25).  Plaintiff maintains that the ALJ misstated Plaintiff's wife because she actually indicated that Plaintiff could perform "some cleaning, some ironing, [but] can't withstand the pressure for long periods of time to mow lawn" (Tr. 152).

Despite Plaintiff's contentions, the Court finds that the ALJ did not misconstrue the evidence.  Pursuant to SSR 96-7p, in assessing Plaintiff's credibility regarding the severity of his pain and symptoms related to his right wrist, the ALJ considered, *inter alia*, statements made by Plaintiff and his wife.  One of the factors an ALJ is to consider is Plaintiff's daily activities.  SSR 96-7p.  In response to a question on the Self Function Report regarding house and yard work, Plaintiff indicated that he cut the lawn and that it usually took him approximately two hours to complete the task (Tr. 144).  It is in response to this same question, which was posed on the Third Party Function Report,

5

that Plaintiff's wife made the statements at issue here (Tr. 152).  Thus, the ALJ did not misstate the

fact that plaintiff mowed the lawn, used the iron, and held a cigarette – Plaintiff himself admitted to

mowing the lawn and his wife expressly stated that he smoked, performed some cleaning and ironed.

Moreover, the ALJ also discredited Plaintiff because he testified that he could use his wrist to play

catch and video games with his children (Tr. 25, 678).  Therefore, the ALJ's assessment of Plaintiff's

physical impairments are supported by substantial evidence.

### B.    Whether the ALJ Erred in his Assessment of Plaintiff's Mental Impairments

#### 1. Dr. Bard's Evaluation

Plaintiff's chief argument is that the ALJ erred by giving significant weight to the findings of

the consulting psychologist, Dr. Bard, because she did not have access to Plaintiff's entire medical

record, which included information related to his traumatic brain injury.  Plaintiff contends that Dr.

Bard's report should have been given little or no weight.  Plaintiff's brief cites to several medical

authorities explaining the importance of knowing a patient's entire medical history prior to a doctor

making a diagnosis.

The ALJ must consider all medical opinions in the record.  *Walton v. Comm'r of Soc. Sec.*, 187

*F.3d 639 (Table), 1999 WL 506979 (6th Cir. June 7, 1999)*; 20 C.F.R. § 404.1527.  It is then within

the ALJ's power to determine how much weight to give to each opinion.  *Id.*  A brief review of the

facts is necessary to properly address this issue.  On June 14, 2005, Plaintiff was admitted to Akron

General Hospital for treatment due to a traumatic brain injury[2] (Tr. 428). In August of 2005, Plaintiff

was examined by Dr. MacPherson, a neurologist, who opined that Plaintiff's exam was within normal

---

[2]It is unclear whether the fight that resulted in Plaintiff's brain injury occurred at a bar or
during a game of dominoes played with neighbors.  Plaintiff has given several different
explanations as to the cause of his injuries.  (Tr. 430-433, 504, 509).

6

limits (Tr. 499-501).  Thereafter, Dr. Bard examined Plaintiff in April of 2006.  Dr. Bard found that Plaintiff showed signs of malingering throughout the examination and that his overall GAF was within a moderate symptom range (Tr. 507-10).

At the hearing held on November 6, 2006, Dr. Lesyk, the ME, affirmed Dr. Bard's findings and also opined that Plaintiff did not meet the requirements of any listing impairment (Tr. 685).  In addition, Dr. Lesyk indicated that Plaintiff's record was replete with inconsistencies due to Plaintiff telling different stories to each of his examining physicians (Tr. 685-86).  The ME further explained that medical exams would be the only types of tests that could accurately diagnose Plaintiff's mental limitations because they solely measured physical functioning (Tr. 686).  Thus, Plaintiff underwent additional medical testing in February of 2007 to determine whether there were any residual effects from his brain injury in 2005.

A third hearing was held on April 19, 2007, following Plaintiff's additional testing.  Again, the ME affirmed Dr. Bard's findings.  Dr. Lesyk explained that Dr. Bard's assessment was not skewed despite not having access to Dr. MacPherson's records because Plaintiff's tests were normal during Dr. MacPherson's exam and would not have impacted Dr. Bard's opinion (Tr. 718).  Furthermore, the ME noted that Plaintiff's February 2007 examination also showed no abnormalities in Plaintiff's brain (Tr. 720).  Thus, the ME concluded that Plaintiff did not meet the requirements of any listing impairment (Tr. 716).

The ALJ did not err by giving significant weight to the opinions of Dr. Bard because the doctor's conclusions were supported by the medical evidence in the record.  Contrary to Plaintiff's argument, Dr. Bard was aware that Plaintiff had suffered a traumatic brain injury in 2005.  *See* Tr. 506.  In addition, both Plaintiff and his wife were present to answer questions regarding Plaintiff's medical history for Dr. Bard (Tr. 503).  In fact, during the psychological consult, Dr. Bard became

7

aware of a wide range of Plaintiff's medical history including, his discharge summary from the Chemical Dependency Services, behavior and mood changes, alcohol and drug dependence, feelings of depression, and instances of memory loss (Tr. 505-506).  Ultimately, Plaintiff failed to cite to what specific aspect of Plaintiff's medical history, that was unknown to Dr. Bard at the time of her assessment, that would have undermined her medical opinion and provided a sufficient basis for the ALJ to discredit her conclusions.  Therefore, because there was ample evidence in the record to support Dr. Bard's conclusions, the ALJ was free to give significant weight to her opinions.

2.  <u>Step Two of the Sequential Evaluation Process</u>

Next, Plaintiff argues that the ALJ erred by failing to find that Plaintiff had a severe cognitive impairment at Step Two of the sequential analysis.  An ALJ's failure to find that a particular impairment is severe at Step Two does not constitute reversible error so long as the ALJ considers all of the claimant's impairments at later steps of the analysis.  *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  Under the regulations, once the ALJ determines the claimant has one severe impairment, the ALJ must consider the limiting effects of all the claimant's impairments, both severe and non-severe.  *Id.*; *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x. 801, 803 (6th Cir. 2003).

Despite finding that Plaintiff did not have a severe cognitive impairment, the ALJ continued to the next step in the sequential analysis (Tr. 21-23).  The ALJ found that Plaintiff's impairments related to his seizure disorder, subarachnoid hemorrhage, iliac fracture, right wrist fracture, depressive disorder and personality disorder were severe (Tr. 21).  In addition, the ALJ noted that all of Plaintiff's impairments, severe and non-severe, were taken into account before determining his RFC (Tr. 20). SSR 96-8p. Although Plaintiff correctly points out that Step Two is a *de minimus* screening device, the ALJ's failure to recognize Plaintiff's cognitive impairments as severe is not reversible

8

error because the record supports a finding that the ALJ considered all of Plaintiff's impairments at later stages.  *See Maziarz*, 837 F.2d at 244.

### 3.  Alleged Misstatements by ALJ

Plaintiff also accuses the ALJ of making several misstatements throughout his opinion.  First, Plaintiff argues that the ALJ's statement that "there [wa]s no medical evidence that explains [Plaintiff's] alleged memory deficit" is not true.  The ALJ made this statement in explaining his negative assessment of Plaintiff's credibility (Tr. 24).  On a technical level, it would be correct to say that the ALJ's statement is not true *per se*.  As Plaintiff correctly notes in his brief, there was evidence in the record showing that Plaintiff had problems with his memory (Tr. 451).  For example, Dr. Faltay, who examined Plaintiff in June of 2005, immediately following his traumatic brain injury, found that Plaintiff could only remember one out of three objects after five minutes (*Id.*).

Any error committed by the ALJ in this sense is *de minimus*.  The essence of the ALJ's statement was that there was no medical evidence to *explain* Plaintiff's memory loss.  Although Plaintiff cites to findings by Dr. Faltay in June of 2005, this does not discredit Dr. MacPherson's findings that Plaintiff's brain function was normal by August of 2005.  In addition, both Dr. Bard and Dr. Lesyk indicated that Plaintiff showed signs of malingering and changing his story throughout his testing. (Tr. 507-510, 686).  Furthermore, after reviewing Plaintiff's entire record,  Dr. Lesyk opined that Plaintiff tried to "trick" many of the interview exams by presenting himself with internal consistency during the period of the interview (Tr. 685).  For example, the ALJ noted that during Dr. Bard's assessment when Plaintiff was asked to recall sets of numbers, "he incorrectly recalled both sequences [of numbers] in an identical manner," and "consistently subtracted one number from arithmetic responses." (Tr. 28).  Thus, the ALJ was entitled to credit the opinions of Dr. Bard and Dr. Lesyk and determine that Plaintiff's memory loss was self-imposed rather than being caused by any

9

mental or physical impairment.

Next, Plaintiff acknowledges that the ALJ briefly discussed Plaintiff's extensive medical records from Edwin Shaw, but argues that the ALJ erred because he did not discuss certain findings in those records.  Namely, Plaintiff addresses the ALJ's failure to discuss Plaintiff's disorientation to time and low executive functioning.  As indicated above, this Court's role is to review the ALJ's decision and determine whether substantial evidence supports his decision.  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 2009 WL 2514058 (6th Cir. Aug. 18, 2009).  Although the ALJ is required to review entire record before rendering a decision, Plaintiff ultimately bears the burden of proving his disability.  *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). In the case *sub judice*, the ALJ noted Plaintiff's cognitive impairments and found that they did not support a finding of disability (Tr. 27, 31).  It was Plaintiff's burden to prove to the ALJ that his disorientation to time and low executive functioning rendered him disabled, not vice versa.  *See Foster*, 279 F.3d at 353.

#### 4.  VE's Hypothetical Question

Lastly, Plaintiff maintains that the hypothetical question posed to the Vocational Expert ("VE") at Step Five of the sequential process did not contain all of Plaintiff's impairments.  Instead, Plaintiff contends that the ALJ should have based the hypothetical question on Plaintiff's impairments as described by Dr. Holbrook and Plaintiff's school records.  The court finds Plaintiff's argument unpersuasive for two reasons.  First, as previously discussed, the ALJ's RFC was substantially consistent with Dr. Holbrook's RFC (Tr. 22, 285).  Therefore, the ALJ's use of Dr. Holbrook's RFC was not likely to change the VE's answer to the hypothetical.  Second, Plaintiff's school records regarding his literacy levels were inconsistent with more recent evidence.  The school records that Plaintiff references are from tests conducted in 1981 (Tr. 176-185).  Yet, as the ALJ noted, on his Disability Report completed during the application process, Plaintiff admitted to being able to read

10

English and write more than his name in English (Tr. 29, 122).  Moreover, Dr. Bard and Dr. Lesyk both concluded that Plaintiff was malingering during literacy testing (Tr. 507-510, 713-716).  The ALJ therefore concluded that Plaintiff was not functionally illiterate (Tr. 29).  Thus, substantial evidence supports the ALJ's hypothetical question posed to the VE describing Plaintiff's impairments.

## V.  DECISION

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner that Plaintiff was not disabled is supported by substantial evidence.  Accordingly, the Court recommends that the decision of the Commissioner be AFFIRMED.


s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: September 9, 2010.


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).